WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-02309-002-TUC-JCH (LCK) |
| Plaintiff, | **ORDER** |
| v. | |
| Alexandra Brooke Wisdom, | |
| Defendant. | |

Before the Court is Defendant Alexandra Brooke Wisdom's Appeal of Magistrate Judge Lynette C. Kimmins's Order denying reconsideration and ordering Wisdom ("Defendant") remain in custody pending trial. Doc. 71. For the following reasons, the Court will deny the Appeal (Doc. 71) and affirm Judge Kimmins's order (Doc. 70).[1]

**I.   Background**

On May 2, 2025, the government filed a complaint alleging Defendant "aided, abetted, counseled, commanded, induced, and procured" the discharge of a firearm "in furtherance of a crime of violence" in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (2). Doc. 3. The complaint also alleged Defendant conspired to discharge a firearm in furtherance of the attempted murder, in violation of 18 U.S.C. § 924(o). *Id.* The charges stem from an incident on April 20, 2025. *Id.* at 1. Around 5:00 p.m., a plainclothes Tucson Police officer spotted a dark-colored Dodge Charger speeding around midtown Tucson. *Id.* The officer started following the Charger in his unmarked vehicle when an unknown

---

[1] The Court finds these matters appropriate for resolution without an oral hearing. Fed. R. Civ. P. 78(b).

1 passenger reached out of the moving Charger and fired six to ten gunshots toward the
2 officer. *Id.* The officer increased his following distance and heard additional gunshots.[2] *Id.*
3 at 2. A marked patrol car attempted to initiate a stop, but the Charger fled and escaped after
4 a short pursuit. *Id.* Surveillance video from two hours before the shooting shows Defendant
5 and her boyfriend, Hassan Omar Kassim, in the Charger. *See id.* at 2–8. About one hour
6 after the shooting, Defendant is captured on surveillance video driving the Charger to the
7 location where police later found it abandoned. *See id.* at 5.

8 On May 29, Magistrate Judge Michael A. Ambri held a detention and dangerousness
9 hearing. Doc. 30. Tucson Police detective and FBI Task Force officer Ben Soltero testified
10 at the hearing and provided additional context for the charges. Doc. 31 at 3–4. He alleged
11 Kassim is a member of the 29th Street Bloods gang and that Defendant is an "associate"
12 of the gang. *Id.* at 3. The plainclothes officer's vehicle was of a similar make and model to
13 one used by a rival gang in the homicide of a Blood gang member. *Id.* Soltero believes the
14 shooting may have been due to a mistaken belief that the plainclothes officer was a member
15 of the rival gang. *Id.*

16 Soltero also testified that, after the shooting, Defendant and Kassim went to Phoenix
17 and stayed in a hotel for about one week. *Id.* at 3. During that time, Kassim attempted to
18 dispose of the weapon purportedly used in the shooting, and Defendant engaged in escort
19 services coordinated by Kassim. *Id.* After Defendant and Kassim left the hotel, staff
20 reported the room had been tagged with gang signs. *Id.* at 4. On May 6, Defendant was in
21 a rented vehicle that fled from police, going up to 90 miles per hour in downtown Tucson.
22 *Id.*; *see also* Arrest Warrant, Doc. 8. After the vehicle escaped police on the freeway, its
23 occupants abandoned the vehicle and fled on foot to a hotel. Doc. 31 at 4. Defendant and
24 Kassim were arrested outside the hotel. *Id.*

25 Defendant's mother testified at the hearing that Defendant was with her from 3:00
26 to 5:30 p.m. on the day of the shooting. *Id.* Defendant's mother also testified that she and
27 Defendant have a difficult relationship, and that Defendant was arrested at age 16 for a

28 ---
[2] Later, police located two bullet impact sites (on a vehicle and a home) and recovered thirteen bullet casings from the shooting area. Doc. 3 at 2.

domestic violence incident against the mother. *Id.* at 5. Judge Ambri ordered Defendant detained pending trial, citing concerns that Defendant is both a flight risk and a danger to the community. *Id.* at 6–8.

On June 4, a superseding indictment modified the charges against Defendant to two counts of accessory after the fact, in violation of 18 U.S.C. § 3. Doc. 34. On June 11, Defendant filed a Motion to Reconsider the detention order based on the fact Defendant was not present during the shooting and the subsequent change in charges against Defendant. Doc. 48. Defendant argued that, unlike the previous charges, the accessory charges do not carry a presumption of detention, and Defendant would benefit from inpatient substance abuse treatment instead of detention. *Id.* at 2–3. The government and Pretrial Services both opposed the motion for reconsideration and recommended Defendant remain in custody. *See* Doc. 55 and Doc. 66. On July 16, Judge Kimmins held a hearing and denied the motion for reconsideration, finding Defendant continued to be a flight risk and pose a danger to the community. Doc. 70.

Defendant appeals Judge Kimmins's order under 18 U.S.C. § 3145(b) and (c). Doc. 71. The government opposes the Appeal. Doc. 74. In addition to the appeal briefings, the Court reviewed the Complaint (Doc. 3), Indictment (Doc. 20), and Superseding Indictment (Doc. 34); the Pretrial Services Report and all addenda (Docs. 13, 19, 58, and 66); Judge Ambri's Order on detention/dangerousness (Doc. 31); the transcript from the July 16 hearing before Judge Kimmins; and Judge Kimmins's Order denying reconsideration (Doc. 70).

II. **Legal Standard**

A district court reviews a magistrate judge's detention order de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates a person be released pending trial unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). The court

///

considers four factors from the Bail Reform Act to determine whether to detain or release the defendant:

> (1) the nature and circumstances of the offense charged…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.*; 18 U.S.C. § 3142(g).

The court must find the defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The court must find the defendant presents a danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in the defendant's favor. *Id.* at 1405.

**III.    Analysis**

    **A.  Nature and Circumstances of the Offense**

Defendant has been charged with being an accessory after the fact, in violation of 18 U.S.C. § 3. Doc. 34. Defendant argues she is not charged with a crime of violence or a crime involving a firearm, and thus there is no presumption for detention. Doc. 71 at 6–7; *see also* 18 U.S.C. § 3142(g)(1). Defendant also argues there is no proof she was aware of the shooting or acted to "hinder or prevent the apprehension, trial, or punishment of any other person." Doc. 71 at 8.

While Defendant is not charged with a crime of violence or a crime involving a

firearm, she is charged with knowingly assisting individuals charged with a crime of violence involving a firearm. Defendant was with at least one co-defendant immediately before the shooting; Defendant abandoned the subject vehicle within an hour of the shooting; she absconded to Phoenix with one co-defendant; and she participated in a high-speed car chase, fleeing from law enforcement. These actions support an inference that Defendant knew of the underlying shooting and nonetheless sought to assist her co-defendant(s) with evading accountability.

The Court may also consider the possible punishment and the incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). A violation of 18 U.S.C. § 3 carries a sentence of imprisonment for up to one-half the maximum term faced by the principal for the underlying offense. Here, the underlying offenses, 18 U.S.C. §§ 924(c)(1)(A)(iii) and (o), carry maximum sentences of 10 and 20 years, respectively. Thus, Defendant faces up to a 15-year imprisonment for her charges. This is further incentive to flee.

The nature and circumstances of the offense weigh in favor of detention.

### B. Weight of the Evidence Against Defendant

The weight of the evidence is the least important factor that the court considers and is not a pretrial determination of guilt. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985); *Townsend*, 897 F.2d at 994.

Here, Defendant is captured on surveillance video in the subject vehicle and associating with co-defendants before and after the shooting. Doc. 3 at 3–5. Shortly after the shooting, footage shows Defendant driving the Charger into an alley, then leaving the alley on foot. *See id.* at 5. There is also testimony from Sergeant Soltero about Defendant's post-shooting activities in Phoenix and high-speed flight from law enforcement in Tucson. Doc. 31 at 3–4. The police also have electronic communications and social media activity that corroborate Defendant's involvement. *See* Doc. 3 and Doc. 27.

The weight of the evidence favors detention.

///

**C. History and Characteristics of Defendant**

Defendant is a 19-year-old U.S. citizen, who has lived in Tucson for the past seven years. Doc. 58 at 1–2. When these events occurred, Defendant lived alone in her own apartment. *Id.* at 2. She has little to no contact with her mother, who also lives in Tucson. *Id.* Defendant's mother stated she would "reluctantly welcome" Defendant to come live with her, but based on the strained relationship between them, Pretrial Services declined to screen Defendant's mother for potential surety or as a third-party custodian. Doc. 13 at 2.

Defendant has no contact with her father and brother, who live in Colorado. Doc. 58 at 2. Defendant has been in a romantic relationship with Kassim, a co-defendant in this case, intermittently over the past three years. *Id.* Defendant is presently unemployed but has intermittent experience in food service and does occasional work as a hair stylist. *Id.*

Defendant is in good physical health. *Id.* She reports no significant mental health history. *Id.* Defendant's mother alleges she encouraged Defendant to seek therapy multiple times, with no success. Doc. 13 at 2. Defendant has a significant substance abuse history. *See* Doc. 31 at 7. According to the substance abuse treatment screening, Defendant began drinking alcohol at age 13. *Id.* At present, Defendant typically uses cocaine and drinks a half-fifth of vodka daily. *Id.*

Defendant completed probation for a domestic violence incident against her mother when Defendant was around 16 years old. Doc. 13 at 2. Defendant's criminal history includes domestic violence assault and disorderly conduct charges at age 17; a shoplifting charge at age 18; and a DUI conviction at age 18, for which she was on unsupervised probation when she was arrested here. Doc. 58 at 3–4.

Considered together, the Defendant's history and characteristics favor detention.

**D. Dangerous Nature**

Magistrate Judge Ambri found, based on the charged offenses and surrounding circumstances, that Defendant is a danger to herself and the community. Doc. 31 at 8. The April 20th shooting and ensuing flight from law enforcement were dangerous to the community. The evidence indicates Defendant did not participate in these actions. But she

provided support to the perpetrators immediately afterward. Then, barely two weeks later, Defendant participated in a high-speed chase with law enforcement through downtown Tucson. Further, Defendant has a history of domestic violence, driving under the influence, and violating probation. Defendant's release is likely to pose a danger to herself and/or community. This factor favors detention.

### IV. Findings

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the person's appearance and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405. Even when risk is present, a defendant must still be released if there are conditions that may be imposed to mitigate the flight risk or risk to the community. *See* 18 U.S.C. § 3142(e). Any doubts about the propriety of release should be resolved in the defendant's favor. *Motamedi*, 767 F.2d at 1405.

The initial indictment charged Defendant for direct involvement in the shooting, which carried a presumption of detention. The superseding indictment abrogated that presumption. Even though the government filed the superseding indictment after Defendant's detention/dangerousness hearing, Judge Ambri heard the mitigating evidence—that Defendant did not directly participate in the shooting—at the hearing and still found detention appropriate. Judge Kimmins considered even more evidence and came to the same conclusion. And the most recent Pretrial Services addendum recommends Defendant remain in detention because no conditions could "reasonably assure either the defendant's appearance in court or the safety of the community." Doc. 66 at 2. The Court agrees: under the circumstances, detention is appropriate.

Defendant has little to no community support. Defendant lacks stable housing or employment. She has significant, ongoing substance abuse issues and a history of flight from law enforcement. Further, if convicted, Defendant faces a potentially lengthy prison sentence. The Court finds by a preponderance of the evidence that Defendant is a flight risk and that no condition(s) will reasonably assure Defendant's appearance on her own recognizance.

      The Court also finds clear and convincing evidence that Defendant presents a danger to the community if released pretrial. Defendant has a history of domestic violence and was on probation when she was arrested. There is credible evidence Defendant tried to help her co-defendants evade capture for what was, essentially, an indiscriminate shooting from a speeding car through a crowded residential neighborhood. And, immediately before her arrest, Defendant was involved in a high-speed chase from police that put the community in serious danger.

**V.**　**Order**

      Accordingly,

      **IT IS ORDERED denying** Defendant's Appeal (Doc. 71) and **affirming** Judge Kimmins's detention order (Doc. 70). Defendant shall remain in custody pending trial.

      Dated this 13th day of August, 2025.

_____
John C. Hinderaker
United States District Judge